IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UROVANT SCIENCES GMBH and SUMITOMO PHARMA AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ANNORA PHARMA PRIVATE LIMITED, HETERO USA INC., HETERO LABS LIMITED, CAMBER PHARMACEUTICALS, INC., and HONOUR LAB LIMITED, <br><br> Defendants. | ) ) ) ) ) ) ) ) C.A. No. _____ ) ) ) ) ) ) ) ) ) |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Urovant Sciences GmbH ("Urovant") and Sumitomo Pharma America, Inc. ("SMPA") (collectively, "Plaintiffs"), by and through their attorneys, for their Complaint against Defendants Annora Pharma Private Limited ("Annora"), Hetero USA Inc. ("Hetero USA"), Hetero Labs Limited ("Hetero Labs"), Camber Pharmaceuticals, Inc. ("Camber"), and Honour Lab Limited ("Honour") (collectively, "Defendants"), allege as follows:

**NATURE OF THE ACTION**

1. This is a civil action for patent infringement of U.S. Patent No. 12,102,638 ("the '638 patent" or "the patent-in-suit") arising under the United States Patent Laws, Title 35, United States Code, § 100, *et seq.*, and in particular under 35 U.S.C. § 271, as well as the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. This action relates to Defendants' filing of Abbreviated New Drug Application ("ANDA") No. 220207 under 21 U.S.C. § 355(j), seeking United States Food and Drug Administration ("FDA") approval to manufacture, use, import, offer to sell, and/or sell in the United States Vibegron Tablets 75 mg; Oral ("Defendants' Generic Product"), which is a generic version of Plaintiffs' GEMTESA® (vibegron), before the expiration of the patent-in-suit.

## THE PARTIES

2. Urovant is a Switzerland limited liability company having its principal place of business at Aeschengraben 27, 4051 Basel, Switzerland.

3. SMPA is a corporation operating and existing under the laws of the State of Delaware, with its principal place of business at 84 Waterford Drive, Marlborough, Massachusetts 01752.

4. Plaintiffs are in the business of developing innovative treatments, science, and technology to address patient needs in the critical areas of oncology, women's health, urology, rare disease, neurology & psychiatry, and cell & gene therapies. The patent-in-suit covers GEMTESA®, which is marketed and sold by SMPA in this judicial district and throughout the United States for the treatment of overactive bladder ("OAB") with symptoms of urge urinary incontinence, urgency, and urinary frequency in adults, and in adult males on pharmacological therapy for benign prostatic hyperplasia ("BPH").

5. On information and belief, Annora is a company organized and existing under the laws of India, with its principal place of business at Sy. No. 261, Plot No. 5, 7, 8, 9, 13 and 14, Annaram, Sangareddy District, Village, Gummadidala Mandal, Telangana, India, 502313.

6. On information and belief, Hetero USA is a corporation organized and existing under the laws of Delaware, with its principal place of business at 1035 Centennial Avenue, Piscataway, New Jersey 08854.

7. On information and belief, Hetero Labs is a company organized and existing under the laws of India, with its principal place of business at #7-2-A2, Industrial Estate, Sanath Nagar, Sanathnagar I E, Hyderabad, Balanagar, Telangana, India, 500018.

8. On information and belief, Camber is a corporation organized and existing under the laws of Delaware, with its principal place of business at 800 Centennial Avenue, Suite 1, Piscataway, NJ 08854.

9. On information and belief, Hetero Labs is a parent company of Annora, Hetero USA, and Camber.

10. On information and belief, Honour is a company organized and existing under the laws of India, with its principal place of business at Nexity, Tower 30, 12th Floor, Survey No. 83/1, Hyderabad Knowledge City, Raidurg, Serilingampally, Madhapur, Hyderabad, Shaikpet, Telangana, India, 500081.

11. On information and belief, Honour is a backward-integrated unit for Hetero Labs.

12. On information and belief, Annora, Hetero USA, Hetero Labs, Camber, and Honour are part of the Hetero group of companies.

13. On information and belief, Annora, Hetero USA, Hetero Labs, Camber, and Honour, in coordination with each other or at the direction of Hetero Labs, are in the business of, among other things, manufacturing, marketing, distributing, importing for sale, and/or selling generic copies of branded pharmaceutical products throughout the United States, including in the State of Delaware.

14. On information and belief, and consistent with their practice with respect to other generic products, following FDA approval of ANDA No. 220207, Defendants will make, use, offer to sell, and/or sell Defendants' Generic Product throughout the United States, including in the State of Delaware, and/or import such generic products in the United States, including into the State of Delaware.

**JURISDICTION AND VENUE**

15. Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

16. This is a civil action for patent infringement and declaratory judgment arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq.*, including 35 U.S.C. § 271, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

17. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

18. This Court has personal jurisdiction over Annora, *inter alia*, under Federal Rule of Civil Procedure 4(k)(1) or (k)(2), because Annora is a foreign corporation and: (a) Annora is subject to the general jurisdiction of the laws of Delaware; and (b) to the extent that Annora is not subject to personal jurisdiction in the courts of any state, Plaintiffs' claims arise under federal law and Annora has sufficient contacts with the United States as a whole, including but not limited to marketing and/or selling generic pharmaceutical products that are distributed and sold throughout the United States, such that this Court's exercise of jurisdiction over Annora satisfies due process.

19. This Court has personal jurisdiction over Annora because, on information and belief, Annora is in the business of manufacturing, marketing, importing, and selling pharmaceutical drug products, including generic drug products, throughout the United States, including in the State of Delaware. On information and belief, Annora directly or indirectly develops, manufactures, markets, and sells generic drugs throughout the United States and in this judicial district. On information and belief, Annora purposefully has conducted and continues to conduct business in this judicial district, and this judicial district is a likely destination of Defendants' generic products.

20. This Court also has personal jurisdiction over Annora because, *inter alia*, it has availed itself of this forum previously for the purpose of litigating a patent dispute. For example, Annora has previously invoked this Court's jurisdiction by bringing counterclaims, *see, e.g., Harmony Biosciences, LLC et al v. AET Pharma US, Inc. et al*, C.A. No. 23-1340 (D. Del. Nov. 21, 2023) and *Merck Sharp & Dohme Corp. v. Annora Pharma Private Ltd. et al*, C.A. No. 21-1006 (D. Del. July 9, 2021).

21. On information and belief, Annora, Hetero Labs, and Camber, either directly or indirectly, currently seek approval for and sell significant quantities of generic drug products in the United States and in this judicial district and import significant quantities of generic drug products into the United States. A Care Edge Rating press release from February 15, 2024, regarding Annora, states: "APPL [Annora] has a United States Food and Drug Administration (USFDA)-approved manufacturing plant. The company has been continuously filing ANDAs, having filed a total of 75 ANDAs to date, of which 40 have received approvals and 35 are under review. [Annora] will reportedly file about 10-12 ANDAs each year, going forward." https://www.careratings.com/upload/CompanyFiles/PR/202402130244_Annora_Pharma_Private_Limited.pdf, at 2 (accessed Apr. 2, 2025). The press release further states that "As a subsidiary of HLL [Hetero Labs Limited], with operational and managerial support, [Annora] derives majority of its revenue by selling its products to group companies. In FY23, the company derived 90.23% (PY: 93.76%) of its revenue by selling products to [Hetero Labs Limited] and Camber Pharmaceuticals Inc (CPI; subsidiary of [Hetero Labs Limited]). Group entities are major contributors to revenue, exposing [Annora] to customer concentration risk. However, CPI, in turn, sells to wholesale distributors in the US. On a consolidated basis, [Hetero Labs Limited] has revenue exposure of about 25% in the US."

https://www.careratings.com/upload/CompanyFiles/PR/202402130244_Annora_Pharma_Private_Limited.pdf, at 2 (accessed Apr. 2, 2025).

22. This Court has personal jurisdiction over Hetero USA. Hetero USA is incorporated in the State of Delaware.

23. Additionally, on information and belief, Hetero USA is in the business of manufacturing, marketing, importing, and selling pharmaceutical drug products, including generic drug products, throughout the United States, including in the State of Delaware. On information and belief, Hetero USA directly or indirectly develops, manufactures, markets, and sells generic drugs throughout the United States and in this judicial district. On information and belief, Hetero USA purposefully has conducted and continues to conduct business in this judicial district, and this judicial district is a likely destination of Defendants' generic products.

24. On information and belief, Hetero USA maintains continuous and systematic contacts with Delaware through its authorized U.S. agent, W/K Incorporating Services, Inc., located at 3500 S Dupont Hwy, Dover, Delaware 19901.

25. This Court also has personal jurisdiction over Hetero USA because, *inter alia*, it has availed itself of this forum previously for the purpose of litigating a patent dispute. For example, Hetero USA has previously invoked this Court's jurisdiction by bringing counterclaims, *see, e.g., Breckenridge Pharmaceutical, Inc. v. Hetero USA Inc. et al*, C.A. No. 24-571 (D. Del. May 10, 2024), *Orion Corp. et al v. Hetero USA, Inc. et al*, C.A. No. 23-1221 (D. Del. Oct. 26, 2023), *AbbVie Inc. v. Hetero Labs Limited et al*, C.A. No. 23-448 (D. Del. Apr. 24, 2023).

26. On information and belief, Hetero USA serves as the U.S. Agent for Annora with regard to ANDA No. 220207. Plaintiffs received two letters from Defendants titled "Notice of Paragraph IV Certification for Vibegron (GEMTESA®) Tablets" and identifying Defendants'

6

ANDA as ANDA No. 220207. Both letters were signed by Somaraju Indukuri, Ph.D. as "U.S. Agent for Annora Pharma Private Limited." The letter packaging identified the sender as "Hetero USA" at "1035 Centennial Ave, Piscataway, NJ 08854" and listed "VatapatraSal.P@hetero.com" and "ra@heterousa.com" as reference emails for the shipment.

27. This Court has personal jurisdiction over Hetero Labs, *inter alia*, under Federal Rule of Civil Procedure 4(k)(1) or (k)(2), because Hetero Labs is a foreign corporation and: (a) Hetero Labs is subject to the general jurisdiction of the laws of Delaware; and (b) to the extent that Hetero Labs is not subject to personal jurisdiction in the courts of any state, Plaintiffs' claims arise under federal law and Hetero Labs has sufficient contacts with the United States as a whole, including but not limited to marketing and/or selling generic pharmaceutical products that are distributed and sold throughout the United States, such that this Court's exercise of jurisdiction over Hetero Labs satisfies due process.

28. This Court also has personal jurisdiction over Hetero Labs because, on information and belief, Hetero Labs is in the business of manufacturing, marketing, importing, and selling pharmaceutical drug products, including generic drug products, throughout the United States, including in Delaware. On information and belief, Hetero Labs directly or indirectly develops, manufactures, markets, and sells generic drugs throughout the United States and in this judicial district. On information and belief, Hetero Labs purposefully has conducted and continues to conduct business in this judicial district, and this judicial district is a likely destination of Defendants' generic products.

29. This Court also has personal jurisdiction over Hetero Labs because, *inter alia*, it has availed itself of this forum previously for the purpose of litigating a patent dispute. For example, Hetero Labs has previously invoked this Court's jurisdiction by bringing counterclaims,

*see, e.g., Breckenridge Pharmaceutical, Inc. v. Hetero USA Inc. et al*, C.A. No. 24-571 (D. Del. May 10, 2024), *Orion Corp. et al v. Hetero USA, Inc. et al*, C.A. No. 23-1221 (D. Del. Oct. 26, 2023), *AbbVie Inc. v. Hetero Labs Limited et al*, C.A. No. 23-448 (D. Del. Apr. 24, 2023).

30. This Court has personal jurisdiction over Camber. Camber is incorporated in the State of Delaware.

31. Additionally, on information and belief, Camber is in the business of manufacturing, marketing, importing, and selling pharmaceutical drug products, including generic drug products, throughout the United States, including in the State of Delaware. On information and belief, Camber directly or indirectly develops, manufactures, markets, and sells generic drugs throughout the United States and in this judicial district. On information and belief, Camber purposefully has conducted and continues to conduct business in this judicial district, and this judicial district is a likely destination of Defendants' generic products.

32. On information and belief, Camber maintains continuous and systematic contacts with Delaware through its authorized U.S. agent, The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange St, Wilmington, Delaware 19801.

33. This Court also has personal jurisdiction over Camber because, *inter alia*, it has availed itself of this forum previously for the purpose of litigating a patent dispute. For example, Camber has previously invoked this Court's jurisdiction by bringing counterclaims, *see, e.g., Breckenridge Pharmaceutical, Inc. v. Hetero USA Inc. et al*, C.A. No. 24-571 (D. Del. May 10, 2024).

34. On information and belief, Camber, either directly or indirectly, currently sells significant quantities of generic drug products in the United States and in this judicial district. Camber's website states: "For over 15 years, Camber Pharmaceuticals has been one of the fastest-

growing generics companies in the United States[,]" https://www.camberpharma.com/our-story/ (accessed Apr. 2, 2025), and that "Camber Pharmaceuticals, established in 2007, is a leading generics company in the U.S., serving as the sales and marketing division for Hetero's prescription products." https://www.camberpharma.com/company-timeline/ (accessed Apr. 2, 2025). Camber further states that they are "Leaders in Product Approvals & Launches" with "62 Anticipated Launches in 2025[,]" "54 ANDA Approval Goal for 2025[,]" and "35 New ANDA Filings in 2025." https://www.camberpharma.com/our-story/ (accessed Apr. 2, 2025). On information and belief, "Camber Pharmaceuticals Inc, a 100% subsidiary of Hetero is one of the fastest growing companies engaged in the marketing of prescription and OTC medicines across various therapies[,]" and Camber has "two dedicated formulation manufacturing facilities approved by USFDA, catering to US generic markets[.]" https://www.hetero.com/presence (accessed Apr. 2, 2025).

35. This Court has personal jurisdiction over Honour, *inter alia*, under Federal Rule of Civil Procedure 4(k)(1) or (k)(2), because Honour is a foreign corporation and: (a) Honour is subject to the general jurisdiction of the laws of Delaware; and (b) to the extent that Honour is not subject to personal jurisdiction in the courts of any state, Plaintiffs' claims arise under federal law and Honour has sufficient contacts with the United States as a whole, including but not limited to marketing and/or selling generic pharmaceutical products that are distributed and sold throughout the United States, such that this Court's exercise of jurisdiction over Honour satisfies due process.

36. This Court also has personal jurisdiction over Honour because, on information and belief, Honour is in the business of manufacturing, marketing, importing, and selling pharmaceutical drug products, including generic drug products, throughout the United States, including in Delaware. On information and belief, Honour directly or indirectly develops,

manufactures, markets, and sells generic drugs throughout the United States and in this judicial district. On information and belief, Honour purposefully has conducted and continues to conduct business in this judicial district, and this judicial district is a likely destination of Defendants' generic products.

37. On information and belief, Honour is the holder of FDA Drug Master File ("DMF") No. 40333 for vibegron.

38. On information and belief, Honour, either directly or indirectly, currently sells significant quantities of generic drug products, or the active pharmaceutical ingredient ("API") for generic drug products, in the United States and in this judicial district. Honour's website lists the FDA under its "Regulatory Approvals," https://honourlab.com/manufacturing.html (accessed Apr. 2, 2025). A Care Edge Ratings press release from January 2, 2024, regarding Honour, states: "Any delay or failure in getting approval for new product launch could adversely affect the business prospect of Honour. Given, India's significant share in the USA's generic market, the USFDA has increased its scrutiny of manufacturing facilities and other regulatory compliance of the Indian pharma companies supplying generics drugs to the USA. Non-compliance may result in regulatory ban on products/facilities (as in the recent cases of import alerts issued by the USFDA to top pharma companies) and may impact a company's future approvals from USFDA. Hence, ongoing regulatory compliance has become critical for Indian pharma companies including Honour as it seeks to strengthen its position in the regulated markets like USA, UK etc." https://www.careratings.com/upload/CompanyFiles/PR/202401140144_Honour_Lab_Limited.pdf, at 2-3 (accessed Apr. 2, 2025).

39. On information and belief, Honour and the other Defendants are part of the Hetero Group of companies. A Care Edge Ratings press release from January 2, 2024, regarding Honour,

states: "The ratings assigned to the bank facilities of Honour Labs Limited (hereinafter known as 'Honour' or the 'Company') continue to derive strength from its being part of the Hetero group, its experienced promoters and management team with a long track record in the pharmaceutical industry, the group's well-established position in multiple therapeutic segments and its presence in the major regulated markets. Hetero group has well-diversified revenue profile with vertically integrated operations, accredited manufacturing facilities with well-equipped R&D facilities and well-established marketing network. Honour acts as backward-integrated unit for Hetero Labs Ltd (flagship company of Hetero Group) and thus derives majority of its revenue (about 60% during FY23) by selling Intermediates and APIs to them." https://www.careratings.com/upload/CompanyFiles/PR/202401140144_Honour_Lab_Limited.pdf, at 1 (accessed Apr. 2, 2025). The Hetero website states "About Hetero Group. The Hetero Group is headquartered in Hyderabad, India. We reach out to the world through our flagship companies – Hetero Drugs Limited and Hetero Labs Limited across diverse businesses. Our marketing arms help us to access various geographies [followed by image of company logos including "Camber Pharmaceuticals, Inc."]." https://www.hetero.com/who-we-are (accessed Apr. 2, 2025). The website further identifies Hetero USA as "a group company of Hetero." https://www.hetero.com/presence (accessed Apr. 2, 2025).

40.     On information and belief, Defendants hold themselves out as a unitary entity and operate as a single integrated business with respect to the regulatory approval, manufacturing, marketing, sale, and distribution of generic pharmaceutical products throughout the United States, including in this judicial district.

41. On information and belief, Defendants have thus been, and continue to be, joint and prime actors in the drafting, submission, approval and maintenance of ANDA No. 220207 and intend to benefit from the ANDA.

42. On information and belief, and consistent with their practice with respect to other generic products, following FDA approval of ANDA No. 220207, Defendants will market, distribute, and sell Defendants' Generic Product described in ANDA No. 220207 throughout the United States, including in Delaware.

43. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b), as to Hetero USA and Camber, because Hetero USA and Camber are incorporated in the State of Delaware.

44. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b), as to Annora, Hetero Labs, and Honour, because Annora, Hetero Labs, and Honour are incorporated in India and may be sued in any judicial district in the United States.

## FACTUAL BACKGROUND

### The NDA

45. Urovant is the holder of New Drug Application ("NDA") No. 213006 for GEMTESA® (vibegron) tablets in a strength of 75 mg.

46. The FDA approved NDA No. 213006 on December 23, 2020.

47. GEMTESA® is a prescription drug approved for the treatment of overactive bladder ("OAB") with symptoms of urge urinary incontinence, urgency, and urinary frequency in adults, and OAB with symptoms of urge urinary incontinence, urgency, and urinary frequency in adult males on pharmacological therapy for benign prostatic hyperplasia ("BPH"). Vibegron is the active ingredient in GEMTESA®.

## The Patent-in-Suit

48. United States Patent No. 12,102,638 ("the '638 patent"), titled "Use of Vibegron to Treat Overactive Bladder," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on October 1, 2024. A true and correct copy of the '638 patent is attached as Exhibit A.

49. Urovant Sciences GmbH owns the '638 patent.

50. The '638 patent currently expires on March 22, 2040, by virtue of 655 days of patent term adjustment granted to the '638 patent under 35 U.S.C. § 154(b). A true and correct copy of the patent term adjustment is attached as Exhibit B.

51. The '638 patent is listed in Approved Drug Products With Therapeutic Equivalence Evaluations ("the FDA Orange Book") in connection with NDA No. 213006 for GEMTESA®.

## The ANDA

52. On information and belief, Defendants submitted ANDA No. 220207 with the FDA under 21 U.S.C. § 355(j) to obtain FDA approval to manufacture, use, import, offer for sale, and/or sell in the United States Vibegron Tablets 75 mg; Oral (defined above as "Defendants' Generic Product"), which is a generic version of Urovant's GEMTESA® (vibegron) tablets.

53. In a letter dated February 20, 2025 ("Defendants' First Notice Letter"), Defendants notified Plaintiffs that an "ANDA was submitted under 21 U.S.C. §§ 355(j)(1) and (2)(A) and contains a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ('Paragraph IV certification') to obtain approval to engage in the commercial manufacture, use, or sale of Annora's ANDA Product, before the expiration of the ['638] Patent." Defendants' First Notice Letter identified Defendants' ANDA as "ANDA No. 220207."

54. Defendants' First Notice Letter purports to be a "Notice of Paragraph IV Certification for Vibegron (GEMTESA®) Tablets" and included an enclosure purporting to be a "detailed statement of the factual and legal basis that the claims of the ['638] Patent are invalid, unenforceable, and/or will not be infringed."

55. Defendants' First Notice Letter asserts that "the ['638] Patent is invalid, unenforceable, and/or will not be infringed by the commercial manufacture, use, or sale of the drug product described in Annora's ANDA."

56. Plaintiffs received a second letter sent by Defendants, dated February 28, 2025 ("Defendants' Second Notice Letter"), purporting to be a "Notice of Paragraph IV Certification for Vibegron (GEMTESA®) Tablets."

57. Defendants' Second Notice Letter had a different date, February 28, 2025, on its face and signature line and included edits to the addresses listed on the first page. Defendants' Second Notice Letter did not otherwise differ from Defendants' First Notice Letter.

58. Plaintiffs commenced this action within 45 days of receiving each of the Defendants' First and Second Notice Letters.

## COUNT I
## (INFRINGEMENT OF THE '638 PATENT)

59. Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

60. On information and belief, Defendants filed ANDA No. 220207 seeking approval to manufacture, use, import, offer to sell, and/or sell Defendants' Generic Product in the United States before the expiration of the '638 patent.

61. On information and belief, Defendants filed with the FDA, pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) and 21 C.F.R. § 314.94(a)(12)(i)(A)(4), a certification alleging that the claims of the '638 patent are purportedly invalid, unenforceable, and/or will not be infringed.

62. On information and belief, Defendants do not contest infringement of at least one claim of the '638 patent because Defendants' Notice Letter did not provide non-infringement allegations addressing indirect infringement for multiple claims.

63. On information and belief, in their ANDA No. 220207, Defendants have represented to the FDA that Defendants' Generic Product is pharmaceutically and therapeutically equivalent to Plaintiffs' GEMTESA®.

64. Defendants have had actual knowledge of the '638 patent, at least as of the date of Defendants' First Notice Letter.

65. On information and belief, if ANDA No. 220207 is approved, Defendants intend to and will manufacture, use, import, offer to sell, and/or sell Defendants' Generic Product in the United States.

66. Under 35 U.S.C. § 271(e)(2)(A), the submission to the FDA of ANDA No. 220207 seeking approval to manufacture, use, import, offer to sell, or sell Defendants' Generic Product before the expiration date of the '638 patent constitutes infringement, either literally or under the doctrine of equivalents.

67. On information and belief, if ANDA No. 220207 is approved, Defendants will infringe one or more claims of the '638 patent, including at least claim 1, either literally or under the doctrine of equivalents under § 271(a), by making, using, offering to sell, selling, and/or importing Defendants' Generic Product, and/or by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court orders that the

effective date of any FDA approval of ANDA No. 220207 shall be no earlier than the expiration of the '638 patent and any additional periods of exclusivity to which Plaintiffs are or become entitled.

68. On information and belief, Defendants know and intend that healthcare professionals will prescribe, and patients will take, Defendants' Generic Product for which approval is sought in ANDA No. 220207, and therefore will infringe at least one claim of the '638 patent, including at least claim 1, either literally or under the doctrine of equivalents.

69. On information and belief, Defendants have knowledge of the '638 patent and, by their proposed package insert for Defendants' Generic Product, will knowingly induce direct infringement of at least one claim of the '638 patent, including at least claim 1, either literally or under the doctrine of equivalents.

70. On information and belief, Defendants are aware and/or have knowledge that their proposed package insert will recommend, suggest, encourage, and/or instruct others how to engage in an infringing use because healthcare professionals and/or patients will use Defendants' Generic Product according to the instructions in the proposed package insert in a way that directly infringes at least one claim of the '638 patent, including at least claim 1.

71. On information and belief, Defendants have had and continue to have knowledge that Defendants' Generic Product constitutes a material part of the invention and is especially adapted for a use that infringes at least one claim of the '638 patent, including at least claim 1.

72. On information and belief, Defendants have had and continue to have knowledge that Defendants' Generic Product is not a staple article or commodity of commerce suitable for substantial non-infringing use for at least one claim of the '638 patent, including at least claim 1.

73. On information and belief, Defendants' actions relating to Defendants' ANDA No. 220207 complained of herein were done by and for the benefit of Defendants.

74. A substantial and justiciable controversy exists between the parties as to the infringement of the '638 patent.

75. Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaratory judgment that Defendants' making, using, offering to sell, selling, and/or importing the ANDA Product, inducement thereof or contribution thereto, will infringe the '638 patent's asserted claims pursuant to 35 U.S.C. §§ 271(a), (b), and/or (c).

76. On information and belief, Defendants acted, and upon FDA approval of ANDA No. 220207, will act, without a reasonable basis for believing that they would not be liable for directly and/or indirectly infringing the '638 patent. This is an exceptional case.

77. Plaintiffs will be irreparably harmed by Defendants' infringing activities unless this Court enjoins those activities.

78. Pursuant to 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

79. Plaintiffs do not have an adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

A. The entry of judgment under 35 U.S.C. § 271(e)(2)(A) that Defendants have infringed at least one claim of the '638 patent through Defendants' submission of ANDA No. 220207 to the FDA to obtain approval to manufacture, use, import, offer to sell, and/or sell Defendants' Generic Product in the United States before the expiration of the '638 patent;

  B. The entry of judgment under 35 U.S.C. § 271(a), (b), and/or (c) that Defendants' making, using, offering to sell, selling, or importing of Defendants' Generic Product before the expiration of the '638 patent, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled, will infringe, actively induce infringement and/or contribute to the infringement of at least one claim of the '638 patent under 35 U.S.C. § 271(a), (b), and/or (c);

  C. The entry of judgment that the claims of the '638 patent are not invalid;

  D. The issuance of an order that the effective date of any FDA approval of Defendants' Generic Product shall be no earlier than the expiration date of the '638 patent including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled, or any such later date as the Court may determine, in accordance with 35 U.S.C. § 271(e)(4)(A);

  E. The entry of a preliminary and/or permanent injunction, enjoining Defendants and all persons and entities acting in concert with Defendants from manufacturing, using, offering for sale, or selling Defendants' Generic Product within the United States, or importing Defendants' Generic Product into the United States, until the expiration of the '638 patent including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled, in accordance with 35 U.S.C. §§ 271(e)(4)(B) and 283;

  F. The entry of a preliminary and/or permanent injunction, enjoining Defendants and all persons and entities acting in concert with Defendants from seeking, obtaining, or maintaining approval of the ANDA until the expiration of the '638 patent including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled, in accordance with 35 U.S.C. §§ 271(e)(4)(B) and 283;

G. The issuance of a declaration that this is an exceptional case and an award to Plaintiffs of their costs, expenses, and disbursements in this action, including reasonable attorney fees, pursuant to 35 U.S.C. §§ 285 and 271(e)(4);

H. An award to Plaintiffs of any further appropriate relief under 35 U.S.C. § 271(e)(4); and

I. An award to Plaintiffs of any further and additional relief that this Court deems just and proper.

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| OF COUNSEL: | /s/ Karen Jacobs |
| James B. Monroe<br>Paul W. Browning, Ph.D.<br>Emily R. Gabranski<br>Jeanette M. Roorda<br>Emma N. Ng<br>FINNEGAN, HENDERSON, FARABOW,<br>GARRETT & DUNNER, LLP<br>901 New York Avenue, NW<br>Washington, DC 20001-4413<br>(202) 408-4000<br><br>David De Lorenzi<br>Christopher Strate<br>GIBBONS P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>(973) 596-4500<br><br>April 3, 2025 | Karen Jacobs (#2881)<br>Rodger D. Smith II (#3778)<br>Jennifer Ying (#5550)<br>Lucinda C. Cucuzzella (#3491)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>kjacobs@morrisnichols.com<br>rsmith@morrisnichols.com<br>jying@morrisnichols.com<br>ccucuzzella@morrisnichols.com<br><br>*Attorneys for Plaintiffs Urovant Sciences GmbH and Sumitomo Pharma America, Inc.* |